IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:22-CV-467-FL

| | |
|---|---|
| HOLLI BRYNNE ROUTTEN, as administrator of the estate of Kelly Routten, ) ) ) Plaintiff, ) ) v. ) ) LIFE INSURANCE COMPANY OF ) NORTH AMERICA, ) ) Defendant.[1] ) | ORDER |

This matter is before the court upon plaintiff's motion for a bench trial (DE 29), and defendant's motion for summary judgment (DE 31). For the following reasons, plaintiff's motion is denied, and defendant's motion is granted.

## STATEMENT OF THE CASE

Plaintiff began this employee benefit action by filing complaint through counsel November 18, 2022.[2] Plaintiff presents a single claim for failure to provide long term disability benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). After the entry of a case management order in June, 2023, and the progress of

---

[1] The court constructively amends the caption to reflect the substitution of Holli Brynne Routten, as administrator of the estate of Kelly Routten, as plaintiff. (Order (DE 60)).

[2] Although Holli Brynne Routten, as administrator of Kelly Routten's estate, has been substituted as plaintiff under Federal Rule of Civil Procedure 25, all substantive activity in this case occurred before Kelly Routten's death. All references in this order to "Routten" or "plaintiff" therefore refer to Kelly Routten unless otherwise indicated.

discovery, plaintiff's counsel moved to withdraw November 20, 2023, which motion the court granted November 30, 2023. (See Order (DE 16)). Plaintiff ultimately proceeded pro se.

The parties filed and fully briefed the instant motions over the summer of 2024, after which the court received notification on October 1, 2024, that Kelly Routten had died. After procedures under Federal Rule of Civil Procedure 25, the court substituted Holli Brynne Routten, as administrator of Kelly Routten's estate, as plaintiff.

Defendant's motion relies upon a voluminous administrative record. Plaintiff's response relies upon the same materials.

## STATEMENT OF FACTS

Plaintiff's former employer, FMR LLC, sponsored and maintained a benefit plan under ERISA (the "plan"). (Def's Statement of Material Facts ("SMF") (DE 33) ¶ 1). Long term disability benefits under the plan are funded by Group Policy No. FLK-980026, which defendant issued to FMR LLC. (Id. ¶ 2). The plan documents allow a covered employee to receive long term disability benefits upon a showing of a satisfactory proof of disability in accordance with the plan's terms. (Id. ¶ 4).[3]

Included in the plan documents is a "claimant cooperation provision," providing that "failure of a claimant to cooperate . . . in the administration of the claim may result in termination of the claim. Such cooperation includes . . . providing any information or documents needed to determine whether benefits are payable or the actual amount due." (Id. ¶¶ 5–6). The plan documents also provide that benefits will end under the plan as of the date the employee fails to

---

[3] Many of plaintiff's responses to defendant's statement of material facts are that certain documents are not themselves an ERISA plan. (See, e.g., Pl's SMF ¶¶ 1–3). The court addresses this argument in the analysis below, concluding that plaintiff's objections on this basis are without merit. The court therefore disregards plaintiff's objections to defendant's statement of material fact which rest solely upon the assertion that a particular document is not labelled definitively as "the plan."

cooperate in such administration. (Id. ¶ 7). Also included in the plan is a "pre-existing condition limitation," which provides that defendant

> will not pay benefits for any period of disability caused or contributed to by, or resulting from, a pre-existing condition. A 'pre-existing condition' means any injury or sickness for which the employee incurred expenses, received medical treatment, care or services including diagnostic measures, took prescribed drugs or medicines, or for which a reasonable person would have consulted a physician within 3 months before his or her most recent effective date or insurance.
>
> The pre-existing condition limitation will apply to any added benefits or increases in benefits. This limitation will not apply to a period of disability that begins after an employee has been in active service for a continuous period of 3 months during which the employee has received no medical treatment, care or services in connection with the pre-existing conditions or is covered for at least 12 months after his or her most recent effective date or insurance, or the effective date of any added or increased benefits.

(Id. ¶¶ 8–9) (hereinafter the "pre-existing condition provision").

Defendant is appointed as the "named fiduciary for adjudicating claims for benefits under the plan, and for deciding any appeals of denied claims[,]" and has "the authority, in its discretion, to interpret the terms of the plan, to decide questions of eligibility for coverage or benefits under the plan, and to make any related findings of fact." (Id. ¶¶10–11).

Plaintiff's coverage under the plan as an FMR LLC employee began on March 2, 2020. (Id. ¶ 12). On November 24, 2020, plaintiff stopped working actively for FMR LLC due to multiple sclerosis. (See id. ¶¶ 13–14). Plaintiff subsequently submitted a claim for short term disability benefits under a short term disability policy administered by defendant, which did not contain a preexisting condition provision. (Id. ¶¶ 15–16). Defendant approved plaintiff's short term disability claim and awarded benefits thereunder from December 1, 2020, through May 22, 2021. (Id. ¶ 17). Defendant then evaluated whether plaintiff's claim could be transitioned to provide long term disability benefits. (Id. ¶ 18).

In a letter dated March 26, 2021, defendant notified plaintiff that it needed to determine whether her long term disability benefits claim was subject to the preexisting condition provision on grounds that disability occurred within 12 months of her effective date of coverage. (Id. ¶ 19). This letter also requested that plaintiff complete a preexisting condition questionnaire for December 1, 2019, through March 1, 2020, authorize release of medical records, and cooperate if contacted by one of defendant's nurse case managers. (Id. ¶ 20). On March 30, 2021, defendant requested a canvass of plaintiff's pharmacy records, which revealed that plaintiff filled six prescriptions for Gilenya, a multiple sclerosis medication, issued by a Duke Medical Center physician assistant between December 20, 2019, and February 29, 2020, plus one additional prescription March 31, 2020. (Id. ¶¶ 22, 24). The canvass also revealed that plaintiff filled prescriptions issued by another physician for the same medication on August 18, September 12, and October 21, 2020. (Id. ¶ 23). Plaintiff does not dispute that these prescriptions appeared as filled in the pharmacy records submitted to defendant, but asserts these records were the result of administrative errors by the pharmacy, and that she did not actually fill these prescriptions. (Pl's SMF (DE 46) ¶ 23).

Plaintiff had a call with one of defendant's nurse case managers on March 31, 2021, during which she stated that she had been diagnosed with multiple sclerosis in 2009. (See Def's SMF ¶¶ 25–26). Plaintiff further indicated that she had seen a physician, "Dr. Skeen," every six months for multiple sclerosis, and that she thought Gilenya was effective. (Id. ¶¶ 27–28). Finally, plaintiff stated that she had transitioned to monthly infusions of Tysabri after she became immune to Gilenya. (Id. ¶ 29).

On May 10, 2021, plaintiff provided a letter to defendant stating she had had not seen Dr. Skeen between "8/2020-10/2020." (Id. ¶¶ 30–31). Plaintiff also provided defendant with an

authorization for the release of medical records maintained by Dr. Skeen and Duke Health, though the parties disagree on the date of this release. (Id. ¶ 32 (providing date of May 10, 2021); Pl's SMF ¶ 32 (stating date of May 17, 2021)).

On May 25, 2021, defendant requested a copy of plaintiff's medical records from Dr. Skeen from December 1, 2019, to May 25, 2021. (Def's SMF ¶ 33). On June 21, 2021, Duke Health sent defendant records for an office visit plaintiff had on January 16, 2020. (Id. ¶ 34). These records confirmed that plaintiff underwent a brain MRI on December 26, 2019, that the January 16, 2020, visit was for multiple sclerosis, and that plaintiff suffered no adverse effects from Gilenya. (Id. ¶¶ 35–37). Based on records from plaintiff's January 16, 2020 office visit, defendant concluded that plaintiff received treatment for multiple sclerosis "within the pre-existing time frame[,]" and therefore denied plaintiff's long term disability benefits claim by letter dated June 10, 2021. (Id. ¶¶ 38–40).

Plaintiff appealed this denial via an undated letter which defendant received on August 17, 2021. (Id. ¶ 41). Plaintiff argued that the preexisting condition provision did not apply because she was employed during the relevant period, and that she provided "a letter from Duke" showing "3 months of no services, treatment or care provided." (Id. ¶ 42). To evaluate the appeal, defendant employed Dr. James Pearce ("Dr. Pearce"), a neurologist, to review plaintiff's file. (Id. ¶ 43). Dr. Pearce concluded that the multiple sclerosis which had caused plaintiff to stop working was the same condition for which plaintiff had received treatment "during the pre-existing look back period of 12/1/19 to 3/1/20." (Id. ¶ 44). Plaintiff disputes this medical conclusion based on her own understanding of her history with multiple sclerosis, but not that Dr. Pearce tendered this opinion. (Pl's SMF ¶ 44). Dr. Pearce could not determine whether plaintiff had a continuous three-month period in which she received no treatment for multiple sclerosis because plaintiff's

file lacked any records documenting any office visit between January 17, 2020, and November 16, 2020. (Id. ¶ 45). Dr. Pearce opined that the lack of medical records for this period does not mean that no medical services were rendered, but rather that no medical records from this period were available for review. (Id. ¶ 46). Plaintiff asserts that this is an unreasonable inference. (See Pl's SMF ¶¶ 45–46).

Defendant therefore informed plaintiff via a letter dated September 21, 2021, that it was requesting records from Dr. Skeen for the period of January 2020 through November 2020, which it hoped to receive by October 7, 2021. (Def's SMF ¶¶ 47–48). Plaintiff responded with a fax, which defendant received on September 27, 2021, stating "I REVOKE ALL PRIOR AUTHORIZATIONS TO RELEASE MY MEDICAL INFORMATION Due to an abuse of plan specifications." (Id. ¶ 49 (capitalization in original)).

Defendant subsequently notified plaintiff of its preliminary decision to uphold its claim denial pursuant to the plan's preexisting condition and claimant cooperation provisions by letter dated September 30, 2021. (Id. ¶ 50). The letter stated defendant's determination that plaintiff received treatment for multiple sclerosis for the periods of December 1, 2019, through March 1, 2020, and August 2020 through October 2020. (Id. ¶ 51). The letter further provided that due to plaintiff's release authorization revocation, defendant could not finalize its review, because it could not obtain records from April 1, 2020, through August 17, 2020, to determine if any three-month gap in treatment existed, and gave additional notice that defendant's decision was due to plaintiff's lack of cooperation. (Id. ¶¶ 52–53). Defendant thereafter finalized its decision to uphold its claim denial on October 14, 2021, and notified plaintiff by letter dated the next day. (Id. ¶¶ 54–58).

6

Case 5:22-cv-00467-FL   Document 61   Filed 03/13/25   Page 6 of 15

## COURT'S DISCUSSION

A. Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B. Analysis

The court first evaluates plaintiff's motion for a bench trial before turning to defendant's motion for summary judgment.

1. Motion for Bench Trial

Plaintiff asserts that a bench trial, rather than summary judgment, is the proper method of adjudication in this case, as is sometimes true in ERISA cases. The court disagrees.

The United States Court of Appeals for the Fourth Circuit has held that a bench trial, rather than summary judgment, is the required method of resolving ERISA denial-of-benefits cases reviewed under a de novo standard. See Tekmen v. Reliance Standard Life Ins. Co., 55 F.4th 951, 961, 961 n.5 (4th Cir. 2022). Generally, a court must review the denial of benefits under an ERISA plan under a de novo standard, unless the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe plan terms. Johnson v. Am. United Life Ins. Co., 716 F.3d 813, 819 (4th Cir. 2013). In the latter case, a court reviews instead under an abuse of discretion standard. Id. Under the abuse of discretion standard, a court reviews a

fiduciary's decisions for reasonableness, and will not disturb them if reasonable even if the court itself would have reached a different decision. Booth v. Wal-Mart Stores, Inc. Associates Health & Welfare Plan, 201 F.3d 335, 341–42 (4th Cir. 2000).

Thus, although the Fourth Circuit has not addressed the issue expressly, summary judgment rather than a bench trial is the appropriate mechanism for resolving an ERISA claim arising under the abuse of discretion standard. Courts across the country, including in this circuit, on this basis decline to conduct bench trials when an ERISA denial of benefits is reviewed for abuse of discretion. See, e.g., Balkin v. Unum Life Ins. Co., No. 21-1623, 2024 WL 1346789, at *13–14 (D. Md. Mar. 29, 2024) (collecting cases); Tobey v. Keiter, Stephens, Hurst, Gary & Shreaves, No. 3:13-cv-315, 2014 WL 61325, at * 3 n.2 (E.D. Va. Jan. 7, 2014); Gallupe v. Sedgwick Claims Mgmt. Servs. Inc., 358 F. Supp. 3d 1183, 1190 (W.D. Wash. 2019); Foster v. Sedgwick Claims Mgmt. Servs., Inc., 125 F. Supp. 3d 200, 204 (D.D.C. 2015); Rabbat v. Standard Ins. Co., 894 F. Supp. 2d 1311, 1313 (D. Or. 2012).

The plan documents in this case provide defendant with discretionary authority to make benefit determination and interpret plan terms. (See AR 1958 (DE 38-8)).[4] This language means this court reviews for an abuse of discretion. Johnson, 716 F.3d at 819; see also, e.g., Wilkinson v. Sun Life & Health Ins. Co., 127 F. Supp. 3d 545, 558 (W.D.N.C. 2015) (holding similar language to create an abuse of discretion standard of review), aff'd, 674 F. App'x 294. Because abuse of discretion is the proper standard, resolution through summary judgment, not a bench trial, is appropriate. Plaintiff's motion for a bench trial is therefore denied.

---

[4] In citations to the administrative record, the court provides the page number on the face of the administrative record, and notes the docket entry where the relevant pages may be found in each such citation.

9

2. Summary Judgment

Defendant contends that its denial of benefits decision passes muster under the applicable standard of review. The court agrees.

As noted, the language of the plan documents confers discretion upon defendant, leading to an abuse of discretion standard of review of defendant's decision to deny plaintiff benefits. Under this standard, the court may not reverse the ERISA plan administrator's decision if it was reasonable. Evans v. Eaton Corp. Long Term Disability Plan, 515 F.3d 315, 322 (4th Cir. 2008). A decision is reasonable if it was the result of a deliberate, principled reasoning process and supported by substantial evidence. Holland, 105 F.3d at 161.

This court evaluates eight factors to assess the reasonableness of a denial of benefits decision: 1) the language of the plan; 2) the purposes and goals of the plan; 3) the adequacy of the materials considered to make the decision and the degree to which they support it; 4) whether the fiduciary's interpretation was consistent with the rest of the plan and prior decisions; 5) whether the decision-making process was reasoned and principled; 6) whether the decision complied with the procedural and substantive requirements of ERISA; 7) any relevant external standard; and 8) the fiduciary's motives and any conflicts of interest. Booth, 201 F.3d at 342–43.

All eight factors here either support defendant's decision or are inapplicable.

a. Language of the Plan

First, defendant's decision applied the clear language of the plan. ERISA plans are generally enforced according to their plain language. Johnson, 716 F.3d at 819–20. The plain language of the plan here states that plaintiff must cooperate by providing any requested information or documents, and that failure to cooperate "may result in termination of the claim." (AR 1884 (DE 38-5)) (hereinafter the "cooperation provision"). This plain language

10

unambiguously warned plaintiff that she had to provide documentation at defendant's request, and that refusal to comply could result in claim denial. Defendant's denial of plaintiff's claim after her refusal to provide any other documentation or records merely carried out what the clear language of the plan contemplated. This factor weighs in defendant's favor.

Plaintiff argues that the claimant cooperation provision is not part of the plan. An ERISA plan is "any plan, fund, or program . . . maintained by an employer . . . [to provide to beneficiaries] (A) . . . benefits in the event of sickness, accident, [or] disability[.]" 29 U.S.C. § 1002(1). The Supreme Court has recognized that this definition of "plan" is "circular" and that various types of documents can constitute a "plan." Pergram v. Herdrich, 530 U.S. 211, 222 (2000). For example, "rules governing collection of premiums, definition of benefits, submission of claims, and resolution of disagreements . . . [can] constitute a plan." Id. at 223; see 29 U.S.C. § 1104(a)(1)(D) (requiring fiduciary to discharge obligations consistent with "document*s* and instrument*s* governing the plan" (emphases added)).

Defendant here relies upon the group policy's insurance certificate for the language supporting its arguments. Although the United States Court of Appeals for the Fourth Circuit has not squarely examined exactly what documents a court may consider as constituting a plan, the United States Court of Appeals for the District of Columbia Circuit has determined, in a thoroughly reasoned and persuasive opinion, that various types of documents may constitute a plan. See Pettaway v. Teachers Ins. & Annuity Ass'n of Am., 644 F.3d 427, 433–34 (D.C. Cir. 2011); District courts in this circuit, and other federal courts of appeal, likewise have looked to various documents, including insurance certificates, as constituting a plan, often relying upon Pettaway. See, e.g., Ward v. Cigna Life Ins. Co. of N.Y., 776 F. Supp. 2d 155, 160–61 (W.D.N.C. 2011) (relying upon insurance certificate as part of a plan); Rollins v. Kjellstrom & Lee, Ins., 109 F.

Supp. 3d 869, 879 (E.D. Va. 2015) (same); Wilkinson, 127 F. Supp. 3d at 558 (relying on other documents), aff'd 674 F. App'x 294 (4th Cir. 2017); Stull v. Life Ins. Co. of N. Am., No. 3:20-cv-291, 2021 WL 4993485, at *7 (W.D.N.C. Oct. 27, 2021) Moore v. Life Ins. Co. of N. Am., No. 6:17-cv-30, 2018 WL 1461502, at *2 (W.D. Va. Mar. 23, 2018); Raybourne v. Cigna Life Ins. Co. of N.Y., 576 F.3d 444, 448–49 (7th Cir. 2009); Horn v. Berdon, Inc. Defined Benefit Pension Plan, 938 F.2d 125, 127 (9th Cir. 1991). On this basis, plaintiff's argument that the claimant cooperation provision is not part of the plan is meritless.

      b.      Goals and Purposes of Plan

The decision accords with the plan's goals and purposes. The plan documents state that the plan's purpose is to provide financial protection in the event of disability, upon satisfactory proof thereof. (AR 1900 (DE 38-5); id. 1911 (DE 38-6)). Defendant attempted to effect the plan's goal's by requiring proof of disability, under its plain language. This factor weights in defendant's favor.

      c.      Adequacy of Materials

The third factor is, at best for plaintiff, neutral. Plaintiff disputes whether the plan's preexisting condition provision[5] applied to her, but that provision's applicability is not the real

---

[5] The preexisting condition provision states that defendant

> will not pay benefits for any period of disability caused or contributed to by, or resulting from, a pre-existing condition. A 'pre-existing condition' means any injury or sickness for which the employee incurred expenses, received medical treatment, care or services including diagnostic measures, took prescribed drugs or medicines, or for which a reasonable person would have consulted a physician within 3 months before his or her most recent effective date or insurance.
>
> The pre-existing condition limitation will apply to any added benefits or increases in benefits. This limitation will not apply to a period of disability that begins after an employee has been in active service for a continuous period of 3 months during which the employee has received no medical treatment, care or services in connection with the pre-existing conditions or is covered for at least 12 months after his or her most recent effective date or insurance, or the effective date of any added or increased benefits.

(Def's SMF ¶¶ 8–9).

question at issue. Defendant's letter to plaintiff, which explained its rationale, stated that the preexisting condition provision applied <u>and also</u> that plaintiff had violated the plan's cooperation provision. (AR 376 (DE 35-1)). Thus, whatever disputes may exist on the preexisting condition provision , the materials in the administrative record reflect that plaintiff refused to cooperate with defendant's investigation after September 28, 2021. (Pl's SMF ¶¶ 49–50). Even assuming that plaintiff is correct on the applicability of the preexisting condition provision, the record evidence still demonstrates that defendant relied upon adequate materials to apply the claimant cooperation provision. This factor is therefore, at best for plaintiff, neutral.

        d.        Fiduciary's Interpretation

The fourth factor also favors defendant. Defendant's decision to enforce the cooperation provision was consistent with the plan documents for the same reasons as it complied with their language under the first factor.

        e.        Decision-Making Process

The fifth factor supports defendant. Defendant initially determined that the preexisting condition provision applied, but then acknowledged that further investigation was required to assess whether that conclusion was correct. It employed a physician to review plaintiff's file, and attempted to obtain additional documentation, which process plaintiff halted by revoking defendant's authorization to review her medical records. (Pl's SMF ¶ 43; AR 363, 373–75 (DE 35-1)). By acknowledging a need to gather further information before reaching a final decision as to presence of a preexisting condition, defendant followed a reasoned decision-making process.

        f.        Requirements of ERISA

The sixth factor also supports defendant. ERISA permits recovery only of benefits owed under a plan's terms. 29 U.S.C. § 1132(a)(1)(B). As discussed above, defendant denied benefits

under the term's unambiguous language requiring plaintiff's cooperation. This failure to cooperate rendered benefits not owed under the plan's plain language, so defendant's decision to deny them therefore complied with ERISA. Id.; see also, e.g., Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 986 (6th Cir. 1991) (affirming denial of benefits based on claimant's refusal to cooperate with plan administrator's requests for documentation); Taylor v. Broadspire Servicing, Inc., 314 F. App'x 187, 193 (11th Cir. 2008) (similar); Schulte v. Boston Mutual Life Ins. Co., No. JKB-14-419, 2015 WL 7273148, at *9–10 (D. Md. Nov. 18, 2015) (similar).

  g.  External Standard

Neither party presents any argument on the seventh factor, which therefore does not favor either side.

  h.  Fiduciary Motive and Conflict

Last, the eighth factor supports defendant. Defendant bears a structural conflict of interest through its double status as both claim reviewer and payor, which it acknowledges. (Def's Br. (DE 32) 18). However, such status is "less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias . . . for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inauccracy benefits." Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 117 (2008).

Here, defendant employs many such checks, including 1) by removing any link between the salaries of claim evaluators and the number of claims paid or denied; 2) not employing quotas for payments or denials; and 3) evaluating employees on the quality of claim decisions, and on whether such decisions accorded with plan documents. (Def's SMF ¶¶ 61–63; Pl's SMF ¶¶ 61–63). Moreover, no record evidence suggests any conflict of interest. There is no basis to infer a

structural conflict of interest actually affected claims administration, because the record here otherwise reflects a reasoned decisionmaking process. See, e.g., Glenn, 554 U.S. at 117; Worsley v. Aetna Life Ins. Co., 780 F. Supp. 2d 397, 408 (W.D.N.C. 2011).

Thus, all eight Booth factors either support defendant, at least in part, or are inapplicable.

Plaintiff's response to defendant's position on the Booth factors goes virtually entirely to whether defendant correctly applied the preexisting condition provision. (See generally Pl's Br. (DE 52)). But as the court noted above, defendant denied plaintiff's claim based on the independent application of two requirements: the preexisting condition provision, and the claimant cooperation provision. (See AR 376 (DE 35-1)). Thus even if plaintiff is correct on all of her contentions about the preexisting condition provision, she provides no argument, and asserts no genuine dispute of material fact, about the claimant cooperation provision, which she undisputedly violated as discussed above. Put simply, perhaps plaintiff was correct about the preexisting condition issue, and perhaps not. But when defendant attempted to resolve that question, plaintiff violated another portion of the plan, which established an independent basis for claim denial.

Because defendant's decision to deny benefits under the claimant cooperation provision was reasonable as a matter of law, defendant's motion for summary judgment is granted.

## CONCLUSION

Based on the foregoing, plaintiff's motion for a bench trial (DE 29) is DENIED. Defendant's motion for summary judgment (DE 31) is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 13th day of March, 2025.

LOUISE W. FLANAGAN
United States District Judge

15